UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SEMKE CONSULTING, INC., d/b/a SEMKE FORENSIC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:11CV1530 TIA ) |
| TIMOTHY R. MCGREAL, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Timothy R. McGreal's Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative to Transfer Venue. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I. Facts**

Viewing the evidence in the light most favorable to the Plaintiff, Semke Consulting, Inc. d/b/a Semke Forensic ("Semke") and determining all factual conflicts in its favor, Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706 (8th Cir. 2003), the Court sets forth the following facts:

This case stems from an employment relationship between Semke Forensic, a Missouri Corporation, and Timothy R. McGreal, who resides in Illinois. (Am. Compl. 1, ECF No. 23) Mr. McGreal contacted Semke Forensic, via electronic email, for the purpose of seeking employment with Semke Forensic. (Pl. Ex. 1, Aff. of Frederick Semke ¶ 3, ECF No. 28-1) Thereafter, Mr. McGreal traveled to St. Charles, Missouri, for a personal interview with Frederick Semke, President of Semke Forensic. Id. at ¶ 4. After the interview, the parties engaged in negotiations via telephone and email regarding the terms of an employment contract. Id. at ¶ 5.

In November of 2009, Mr. Semke emailed an unsigned "Employment Agreement" and an "Employment Agreement and Confidential Information Agreement" from the St. Charles, Missouri office to Mr. McGreal in Illinois. Id. at ¶ 6. On November 24, 2009, McGreal signed and returned the agreements to Mr. Semke via UPS and email. (Def. Ex. A, Aff. of Timothy R. McGreal ¶ 6, ECF No. 5-1) Mr. Semke signed the agreements on behalf of Semke Forensic the following day. (Pl. Ex. 1 ¶ 8, ECF No. 28-1) The parties agreed to an amendment of the agreements in February 2011. (Am. Compl. 9, ECF No. 23)

Mr. McGreal worked for and was employed by Semke Forensic from November 25, 2009 through July 8, 2011, when Semke terminated Mr. McGreal's employment. (Pl. Ex. 1 ¶ 9, ECF No. 28-1) Pursuant to the employment agreements, Mr. McGreal was to establish and maintain an office on behalf of Semke Forensic in the Chicago area. Id. at ¶ 10. During part of his employment, Mr. McGreal worked out of an office his home. (Def. Ex. A, Counter-Aff. of Timothy R. McGreal ¶ 6, ECF No. 31-1) Mr. McGreal eventually established an office in a facility leased by Semke Forensic through its St. Charles, Missouri office. (Pl. Ex. 1 ¶ 12, ECF No. 28-1) Semke paid all utilities when the Chicago office was established, except trash disposal, through its St. Charles, Missouri office. (Pl. Ex. 1 ¶ 13, ECF No. 28-1; Def. Ex. A ¶ 5, ECF No. 13-1) Semke also provided Mr. McGreal with a laptop computer and later installed a computer system in the Chicago-area office that networked with the Semke computer system in St. Charles, Missouri. (Pl. Ex. 1 ¶¶ 15, 26, ECF No. 28-1) Through this system, Mr. McGreal accessed data from the St. Charles, Missouri office. Id. at ¶ 16. Semke additionally provided business materials, including business cards, marketing materials, forms, and confidential business information. Id. at 25. Mr. McGreal procured office supplies at Illinois office supply stores and online and was not provided letterhead. (Def. Ex. A ¶ 16,

2

ECF No. 31-1)

Mr. McGreal's compensation was generated from the St. Charles, Missouri office, and his health insurance benefits were administered by Semke Forensic's St. Charles office through a Missouri broker. (Pl. Ex. 1 ¶¶ 20, 23, ECF No. 28-1) In addition, McGreal engaged in repeated communications with Semke's St. Charles, Missouri office regarding his work for Semke Forensic. Id. at ¶ 24. Weekly conference calls were made to a toll free number and involved McGreal and staff members from the St. Charles and Kansas City, Missouri offices. (Pl. Ex. 1 ¶ 27, ECF No. 28-1; Def. Ex. A ¶ 17, ECF No. 31-1 ) Further, Mr. McGreal visited the Missouri office to inspect a ladder in Columbia, Missouri at the request of Semke and to give a presentation to the Kansas and Missouri Chapter Meeting of the National Association of Subrogation Professionals in St. Charles, Missouri. (Def. Ex. A ¶¶ 9-11, ECF No. 5-1) After the presentation, Mr. McGreal visited the Semke office in St. Charles. Id. at ¶ 10.

Personnel in the St. Charles, Missouri office physically generated, reviewed, and sent forensic reports to the majority of clients that McGreal procured and/or serviced. (Pl. Ex. 1 ¶ 21, ECF No. 28-1) In addition, billing was generated by and sent from Semke's St. Charles, Missouri office, and clients made payments to that office. Id. at ¶¶ 18-19. Mr. McGreal had a different arrangement with one client, Rimkus Consulting, which was his largest client in Illinois. (Def. Ex. A ¶¶ 12-13, ECF No. 31-1) On July 8, 2011, Semke Forensic terminated Mr. McGreal's employment. (Pl. Ex. 1 ¶ 29, ECF No. 28-1) After his termination, Mr. McGreal requested compensation based upon his interpretation of the Contract. (Id.; Def. Ex. A ¶¶ 19-21) No settlement discussions ensued, despite McGreal's attempts to contact Semke and resolve the matter. (Pl. Ex. 1 ¶ 31, ECF No. 28-1; Def. Ex. A ¶¶ 20-23, ECF No. 31-1)

3

## II. Procedural History

On July 12, 2011, Semke filed a Petition for Declaratory Judgment in the Circuit Court of St. Charles County, Missouri, asserting a declaration that it owed nothing further to Mr. McGreal under the terms of the agreements, as amended by the February 7, 2011 amendment. Mr. McGreal removed the case to federal court on September 1, 2011 on the basis of diversity jurisdiction. The following day, Mr. McGreal filed a Motion to Dismiss for Lack of Personal Jurisdiction.

Approximately two weeks earlier, on August 18, 2011, McGreal filed a law suit against Semke and Semke Forensic in the United States District Court for the Northern District of Illinois, alleging breach of contract, tortious interference with contract, and violation of the Illinois Wage Payment and Collection Act. McGreal v Semke, No. 11 C 5603, 2011 WL 5868235 (N.D. Ill. Nov. 22, 2011). In response, Semke filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2), (3), and (6) in the Illinois court, and on November 22, 2011, the court denied Semke's motion.[1] Id. Specifically, the court found that Mr. Semke had sufficient minimum contacts with Illinois for the court to exercise personal jurisdiction and that the first-filed rule did not apply because Semke's declaratory judgment action was anticipatory and did not warrant priority over McGreal's coercive action. Id. at *2-*4.

In this Court, the undersigned issued a Rule 16 Order on September 30, 2011 and held a conference on November 10, 2011. During the conference, the undersigned informed the parties that the Court would likely deny McGreal's motion to dismiss and find that the Court had personal jurisdiction over McGreal. However, on December 29, 2011, Semke filed an Amended Complaint,

---

[1] The Illinois court did grant the motion only to the extent that it found personal jurisdiction did not exist as to Frederick Semke's wife, Patricia. McGreal v Semke, No. 11 C 5603, 2011 WL 5868235, at *2 (N.D. Ill. Nov. 22, 2011).

4

alleging breach of contract, tortious interference with contract, fraud, and conversion, in addition to its request for declaratory judgment. (Amended Complaint, ECF No. 23) Due to the filing of an amended complaint, the undersigned denied McGreal's motion to dismiss as moot. Thereafter, McGreal filed the present Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative to Transfer Venue. The motion is now fully briefed and ripe for disposition.

### III. Legal Standards

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a prima facie showing that personal jurisdiction exists." Riceland Foods, Inc. v. SCF Marine, Inc., No. 4:09CV830 CDP, 2009 WL 2928764, at *2 (E.D. Mo. Sept. 9, 2009) (citation omitted). As previously stated, the court views the evidence in the light most favorable to the plaintiff and determines factual conflicts in favor of the plaintiff. Id.

To determine whether personal jurisdiction exists, the forum state's long-arm statute must be satisfied, and the exercise of personal jurisdiction must be consistent with due process. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (citation omitted). "Missouri has construed its long-arm statute to confer jurisdiction to the fullest extent permitted by the United States Constitution." Helenthal v. Polk, No. 4:08-CV-1791 CEJ, 2010 WL 546313, at *1 (E.D. Mo. Feb. 9, 2010) (citations omitted). Thus, the single issue before the court is whether the exercise of personal jurisdiction comports with due process. Id.

Due process requires that minimum contacts exist between a nonresident defendant and the forum states such that the exercise of personal jurisdiction is consistent with traditional notions of fair play and substantial justice. Wells Dairy, 607 F.3d at 518 (citations omitted). "'Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should

reasonably anticipate being haled into court there.'" Id. (quoting Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994)). A defendant reasonably anticipates being haled into the forum state's court where the defendant performs some act by which it "'purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" Id. (quoting Bell Paper Box, 22 F.2d at 818-19). The Eighth Circuit Court of Appeals has established a five-part test to measure a defendant's contacts with the forum state:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Id. (quoting Bell Paper Box, 22 F.2d at 819). Courts evaluate personal jurisdiction under the theories of general jurisdiction and specific jurisdiction. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).

Under the general jurisdiction theory, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Id. (citation omitted). Specific jurisdiction, on the other hand, requires that "the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Id. (citation omitted).

With regard to the first-filed rule, the Eighth Circuit Court of Appeals recognizes that in cases of concurrent jurisdiction, "'the court in which jurisdiction first attaches has priority to consider the case.'" RK Dixon Co. v. Dealer Marketing Servs., Inc., 284 F. Supp. 2d 1204, 1213 (S.D. Iowa 2003) (quoting Orthman v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985)). "'The first-filed rule is not intended to be rigid, mechanical, or inflexible, but is to be applied in a

6

manner best serving the interests of justice. The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply.'" Eveready Battery Co. Inc. v. L.P.I. Consumer Prod., Inc., 464 F. Supp. 2d 887, 890 (E.D. Mo. 2006) (quoting Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993)). "Compelling circumstances are generally those that tend to show that the first-filing party either 'acted in bad faith [or] raced to the courthouse to preempt a suit by [the other party].'" Maytag Corp. v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, No. 4:08-cv-00291-JEG, 2009 WL 350649 at *6 (S.D. Iowa Feb. 11, 2009) (quoting Northwest Airlines, Inc., 989 F.2d at 1007 (8th Cir. 1993)). Courts have also recognized another exception to the first-filed rule, the "balance of convenience" exception. Terra Int'l, Inc. v. Mississippi Chem. Corp., 922 F. Supp. 1334, 1348 (N.D. Iowa 1996). The "balance of convenience" exception applies where an analysis under 28 U.S.C. § 1404(a) dictates transfer. Id. at 1348-49.

## IV. Discussion

Mr. McGreal argues that personal jurisdiction does not exist because the contract between Mr. McGreal and Semke was made in Illinois, not Missouri, and because the lawsuit does not arise from Mr. McGreal's transaction of business in the State of Missouri. Plaintiff, on the other hand, asserts that the contract was entered into in Missouri, establishing jurisdiction. Plaintiff further maintains that Mr. McGreal conducted business within the State of Missouri, thus satisfying the Missouri long arm statute and the Due Process Clause of the Fourteenth Amendment.

While Mr. McGreal attempts to minimize his employment relationship with his Missouri employer and argues a lack of specific jurisdiction, the Court finds that Semke has satisfied its burden of proving general personal jurisdiction. As stated above, Mr.McGreal had multiple contacts with

the State of Missouri that were almost entirely related to his employment relationship with Semke Forensic, a Missouri corporation. First, he sought employment with Semke and initiated contact to achieve that employment. He traveled to Missouri to interview for the position. He negotiated his contract with Semke via email and telephone. He traveled to Missouri as an employee of Semke to inspect a ladder, and he visited the Semke offices in St. Charles, Missouri. In addition, Mr. McGreal directly communicated with the St. Charles, Missouri office regarding his work, and he participated in weekly conference calls with staff from the Semke St. Charles and Kansas City, Missouri offices. Mr. McGreal was also part of the Semke Forensic computer system network located in Missouri. His compensation came from, and his health benefits were administered through, the St. Charles, Missouri office.

Thus, even though Mr. McGreal did not physically work in Missouri, the undersigned finds that Mr. McGreal's contacts with and connection to Missouri were of such nature, quality and quantity should have reasonably anticipated being haled into Missouri court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) ("it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."). As such, the undersigned finds that this Court's exercise of personal jurisdiction over Mr. McGreal is consistent with the traditional notions of fair play and substantial justice such that Mr. McGreal's motion to dismiss for lack of personal jurisdiction should be denied. Burger King Corp., 471 U.S. at 476.

However, the jurisdictional analysis is not the end of the inquiry in this matter. The Court also finds that with regard to McGreal's motion to dismiss or transfer because the lawsuit was filed in anticipation of litigation, the case should be transferred to Illinois. The undersigned first notes that the United States District Court for the Northern District of Illinois determined that Semke's declaratory judgment action, filed four days after firing McGreal, was anticipatory and did not warrant the benefit of the first-filed rule. McGreal v Semke, No. 11 C 5603, 2011 WL 5868235, at *2 (N.D. Ill. Nov. 22, 2011). The undersigned agrees with the analysis of the Illinois court. The facts demonstrate that McGreal contacted Semke in an effort to resolve the employment dispute yet later discovered that Semke had filed this lawsuit in Missouri federal court. The timing of Semke's suit, coupled with the fact that McGreal sought to resolve the matter before being aware of the suit, demonstrate that Semke rushed to the court house in order to litigate the suit in Missouri. Id.; see also Eveready Battery Co. Inc. v. L.P.I. Consumer Prods., Inc., 464 F. Supp. 2d 887, 891 (E.D. Mo. 2006) (finding first-filed rule did not apply where plaintiffs filed declaratory judgment action without informing defendants, the parties continued to engage in settlement negotiations, and plaintiffs did not serve the complaint until after defendant filed an action in a different state). That Semke amended its complaint to include coercive claims after the Illinois court's ruling does not change the facts that led to that ruling or this Court's determination. Thus, the Court finds that compelling circumstances exist in this case such that the Court should not apply the first-filed rule.

In addition, the undersigned finds that balance of convenience exception also applies in the instant case, warranting transfer to the Northern District of Illinois. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Semke's

9

Amended Complaint essentially mirrors most of McGreal's Illinois suit. The Illinois court determined that it had jurisdiction, and the case has been progressing in that court. Further, aside from the filing of the amended complaint and the motions to dismiss, the case here has not progressed such that judicial economy would be disturbed. Indeed, the undersigned agrees with the Illinois court that questions of both Illinois and Missouri law are "at issue such that the interests of justice does not favor one forum over the other." McGreal v Semke, No. 11 C 5603, 2011 WL 5868235, at *2 n.2 (N.D. Ill. Nov. 22, 2011) To the extent that the choice of law provision requires that Missouri law governs, this Court is confident that the Northern District of Illinois can properly apply Missouri law. Further, nothing in Semke's pleadings indicates that Semke would be inconvenienced by litigating in Illinois. Therefore, the undersigned finds that transfer to the United States District Court for the Northern District of Illinois is proper.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Timothy R. McGreal's Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative to Transfer Venue [Doc. #24] is **DENIED** in part and **GRANTED** in part, consistent with this Memorandum and Order.

**IT IS FURTHER ORDERED** that this case is transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

**IT IS FINALLY ORDERED** that Defendant's Motion to Quash Notice of Deposition [Doc. #29] is **GRANTED**.

/s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this   30th   day of January, 2012.